UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR　　　　　　MDL No. 15-2666 (JNE/DTS)
WARMING DEVICES PRODUCTS　　　　　　　ORDER
LIABILITY LITIGATION

This Document Relates to:
Case No. 17-cv-2149 (*George Skinner v. 3M Company and Arizant Healthcare, Inc.*)

In October 2011, George Skinner, a resident and citizen of Iowa, "underwent surgery during which the Bair Hugger Forced Air Warming system (hereinafter 'Bair Hugger') was used during the course and scope of his left total knee arthroplasty . . . at Trinity Regional Health System, in Bettendorf, Iowa." (Compl. ¶¶ 2, 6) He alleged that "[c]ontaminants introduced into [his] open surgical wound as a direct and proximate result of use of the Bair Hugger during the subject surgery resulted in [him] developing a periprosthetic joint infection." (Compl. ¶ 7) "As a result of [his] infection caused by the Bair Hugger, [Skinner] underwent a removal of his prosthesis and installation of a spacer on or about April 2, 2012, and removal of the antibiotic spacer and installation of a new prosthesis on or about July 11, 2012, at Mercy Hospital, in Iowa City, Iowa." (Compl. ¶ 8)

Approximately five years after the July 2012 surgery, Skinner brought this action against 3M Company and Arizant Healthcare, Inc. (collectively, "Defendants"). He asserted several claims: negligence; strict liability based on failure to warn; strict liability based on defective design and manufacture; breach of express warranty; breach of implied warranty of merchantability; violation of the Minnesota Prevention of Consumer Fraud Act; violation of the Minnesota Deceptive Trade Practices Act; violation of the

1

Minnesota Unlawful Trade Practices Act; violation of the Minnesota False Advertising Act; consumer fraud and/or unfair and deceptive trade practices under Iowa law; negligent misrepresentation; fraudulent misrepresentation; fraudulent concealment; and unjust enrichment.  The case is before the Court on Defendants' Motion for Summary Judgment and Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Yoav Golan.  For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment and denies their motion to exclude as moot.

I.      **Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendants maintained that summary judgment in their favor is appropriate because (1) "all of [Skinner's] claims are time-barred under Iowa's two-year statute of

2

limitations"; (2) his "claims . . . fail because [he] lacks admissible evidence of specific causation"; (3) his "failure-to-warn-based claims fail because [he] can offer no evidence of an applicable duty to warn as of the date of his . . . surgery"; (4) his "Minnesota consumer-protection claims fail because [he] was not injured in Minnesota and the Minnesota statutes [he] attempts to invoke do not apply extraterritorially"; (5) his "breach-of-warranty claim fails because [he] has no evidence of an actionable express warranty, let alone one that was relied upon and caused [him] injury"; (6) his "fraud-based claims under Iowa law fail because there was no false representation and no reliance"; and (7) his "punitive-damages claim fails because he lacks sufficient evidence of the type of egregious conduct under any punitive damages standard."  Skinner responded by "stipulat[ing] to the dismissal of the following claims: breach of express warranty (Count III), breach of implied warranty (Count IV), Minnesota consumer protection (Counts V, VI, VII, VIII), fraud (Count IX), negligent misrepresentation (Count X), fraudulent misrepresentation (Count XI), and fraudulent concealment (Count XII)."  With respect to his remaining claims, he asserted that Defendants' motion should be denied because (1) his "claims are timely under Iowa's two-year statute of limitations pursuant to the discovery rule"; (2) he "presents sufficient facts to support specific causation"; (3) he "presents sufficient facts to support his failure to warn and negligence claims"; and (4) his "punitive damages claims withstand summary judgment as he has sufficient evidence of the type of egregious conduct that is required."  Considering Skinner's statement that Counts III–XII may be dismissed, the Court dismisses the claims and turns to whether his remaining claims are time-barred.

Under Iowa law, a two-year limitation period applies to actions "founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty." Iowa Code § 614.1(2). "Under the discovery rule, . . . a limitations period does not begin to run until the plaintiff discovers, or with reasonable diligence should have discovered, the injury giving rise to the claim." *Rivas v. Brownell*, 18 N.W.3d 211, 221 (Iowa 2025); *see Est. of Montag v. T H Agric. & Nutrition Co.*, 509 N.W.2d 469, 470 (Iowa 1993) ("Under our cases, the statute of limitations begins to run when a plaintiff first becomes aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause."); *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985) ("Under the discovery rule, the statute of limitations begins to run when the injured person discovers or in the exercise of reasonable care should have discovered the allegedly wrongful act."). "This latter concept—'should have discovered'—is commonly referred to as inquiry notice." *Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 736 (Iowa 2008). "A party is placed on inquiry notice when a person gains sufficient knowledge of facts that would put that person on notice of the existence of a problem or potential problem. On that date, a person is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation." *Id.* (citation omitted); *see Ranney v. Parawax Co.*, 582 N.W.2d 152, 155 (Iowa 1998). "[T]he duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury. It is sufficient that the person be aware that a problem existed. One purpose of inquiry is to ascertain its exact nature." *Franzen*, 377 N.W.2d at 662; *see Buechel*, 745 N.W.2d at

4

736; *Ranney*, 582 N.W.2d at 155 ("[O]nce a claimant knows or should know that his condition is possibly compensable, he has the duty to investigate."); *Sparks v. Metalcraft, Inc.*, 408 N.W.2d 347, 352 (Iowa 1987). "Because the 'discovery rule' is an exception to the normal limitations period, plaintiffs have the burden of pleading and proving its application." *Kraciun v. Owens-Corning Fiberglas Corp.*, 895 F.2d 444, 445 (8th Cir. 1990).

Skinner maintained that "[a] reasonabl[e] jury could conclude that [he] did not discover evidence of a causal [connection] between his injuries and the defective Bair Hugger system until 2016" and that he "filed his lawsuit in 2017, well within Iowa's two-year statute of limitations." Although he acknowledged that he "may have known he was injured in March 2012," Skinner asserted that "he did not have any knowledge that his injury was caused by the Bair Hugger or that the Bair Hugger was defective" at that time. He contended a diligent investigation would not have "informed him of any defect." Skinner claimed that he "had no knowledge of the Bair Hugger being used in his surgery until June 23, 2016 when his medical records revealed the use of the Bair Hugger"; that his surgeon "had no specific recollection that a Bair Hugger was used during the surgery as the use of the device often falls to the anesthesiologist"; that he "followed up with his physicians following his October 12, 2011 surgery as instructed and was never told that the Bair Hugger could have caused his infection"; that he "never visited a website or blog regarding patient warming systems or their risks and/or benefits"; that "[h]e never participated or engaged in discussions in any public forum on the internet or other media concerning Bair Hugger's connection to PJI"; that "the smattering of information that

5

was available online connecting infections to Bair Hugger, was not sufficient to put [him] on notice."

Skinner underwent a left total knee arthroplasty in October 2011. In March 2012, Skinner was diagnosed with a periprosthetic joint infection. The next month, he underwent surgery to remove his left knee implant, to irrigate and debride his left knee, and to place an antibiotic spacer. In July 2012, he underwent surgery to remove the antibiotic spacer and to reimplant his left knee replacement. At his deposition, Skinner testified that he did not speak with any doctors about what might have caused his infection and that no doctor told him the Bair Hugger caused or contributed to his infection. After he retained counsel, he requested his medical records in 2016. He claimed that he first discovered the Bair Hugger was used in his October 2011 surgery when his medical records were reviewed on June 23, 2016. Almost one year later, on June 21, 2017, he filed this action.

Viewing the record in the light most favorable to Skinner, the Court concludes that Iowa's discovery rule does not make Skinner's action timely. More than a year before he brought this action, he was diagnosed with a periprosthetic joint infection, he underwent surgery to remove his knee implant and to place an antibiotic spacer, and he underwent another surgery to remove the antibiotic spacer and to reimplant his knee implant. At any time after he was diagnosed with a periprosthetic joint infection in March 2012, he could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting

surgeries. The limitation period did not await review of his medical records in June 2016 to start running. His action, filed in June 2017, is untimely.[1] *See Ranney*, 582 N.W.2d at 155–57; *Sparks*, 408 N.W.2d at 352.

### II. Motion to Exclude Expert Opinions and Testimony

Defendants moved to exclude the opinions and testimony of Dr. Yoav Golan. Having concluded that Skinner's action is untimely, the Court denies as moot Defendants' motion to exclude.

### III. Conclusion

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 62] is GRANTED.

2. Defendants' Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Yoav Golan [Docket No. 69] is DENIED.

3. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 11, 2025

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[1] Having concluded that Skinner's action is untimely, the Court need not consider Defendants' remaining arguments for summary judgment.